# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES E. AMOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-800-JED-TLW |
| ) | |
| THE CITY OF CLAREMORE ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The Court has for its consideration defendant City of Claremore's Motion for Summary Judgment (Doc. 21). Defendant seeks summary judgment with respect to plaintiff Charles E. Amos's federal discrimination claims, as well as his claim of intentional infliction of emotional distress brought under Oklahoma law.

### BACKGROUND

Plaintiff Charles E. Amos, an African-American, was employed as a garbage truck driver by defendant City of Claremore's (the "City") Sanitation Division. On April 24, 2013, Amos's employment was terminated. Amos claims that he was terminated because he is African American.

Amos first worked for the City of Claremore from June 6, 1990 until October 29, 1999, when he was terminated, according to City records, for workplace disruption, insubordination, preventable accidents, and poor work performance. (Docs. 21-1, 21-2, 21-3). In May 2011, the City decided to rehire Amos. Carolyn Chapman, Director of Human Resources for the City, resisted the decision, in part due to Amos's prior termination. Deposition of Carolyn Chapman 35:11-22. After Amos met with Chapman and expressed his desire to return to work for the

City, (Doc. 27-4 at 14:5-21), the City rehired Amos on May 5, 2011, under the supervision of Superintendent Donnie Burgess. (Doc. 21-6).

The City terminated Amos's second term of employment via a letter dated April 24, 2013, which Chapman drafted and Burgess signed. (Doc. 27-1 at 72:10-22). The letter set forth the following reasons for Amos's termination: On Monday, April 22, 2013, Amos became frustrated and left work before the day's garbage routes were completed. (Doc. 27-8). The following morning, Tuesday, April 23, 2013, Amos called in sick and did not attend work. (*Id.*). At 7:20 a.m. on April 24, 2013, Amos gave notice that he would miss a second day of work, in spite of not having prearranged his absence, because he had to take his wife to the hospital for an unnamed procedure. (*Id.*). Finally, the letter described, as a general matter, Amos's damaging, "infectious" attitude, his "unwillingness to work effectively as part of a team," and previous discussions and meetings regarding Amos's poor attitude and behavior.[1] (*Id.*).

After Amos filed a discrimination complaint with the EEOC, the EEOC issued a right to sue letter on August 28, 2013. Amos commenced this litigation in the Rogers County District Court on November 26, 2013, alleging claims under Title VII of the Civil Rights Act of 1964, 42

---

[1] Specifically, after detailing Amos's absences the letter read as follows:

> You have demonstrated significant displeasure with your co-workers and your job. It is natural for employees to be out of sorts on occasion but your attitude is infectious and influences the attitudes and actions of others. We have discussed your reluctance to be supervised and unwillingness to work effectively as part of the team on several previous occasions. We even met with Human Resources to discuss the way the rest of the crew viewed your behavior. You promised to work on demonstrating more of a team effort.
>
> I now believe that you are not productively working within the sanitation department team. This letter serves as official notice of your termination for "the good of the City of Claremore", [sic] effective today April 24, 2013. Please contact Human Resources concerning the impact of this action on your continued benefits.

U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981, as well as intentional infliction of emotional distress based on the allegedly extreme and outrageous nature of the purported discrimination. (Docs. 2, 2-1 at 10-12). On December 18, 2013, the City removed the case to the Northern District of Oklahoma on the basis of federal subject matter jurisdiction. (Doc. 2).

**STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see also Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## DISCUSSION

### I. <u>Title VII Disparate Treatment Claim</u>

Amos's Title VII claim for disparate treatment is based upon his termination, which he alleges was motivated by racial animus. In order to state a claim for disparate treatment on the basis of race under Title VII, the plaintiff must demonstrate "(1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008). Once a plaintiff can establish a prima facie case of discrimination or retaliation, the burden shifts directly to defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment actions which are at issue. *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005). Once the employer articulates its nondiscriminatory justification for the adverse employment action, the burden then shifts back to the plaintiff to show that the employer's proffered justification is pretextual. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). "A Plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence." *Chavez*, 396 F.3d at 1104 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)). If a plaintiff presents evidence that the defendant's proffered reason for the employment decision

4

was pretextual, *i.e.*, unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial. *Kendrick v. Penske Transport Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

The City seeks summary judgment on the basis that Amos cannot make a showing of disparate treatment as compared to any similarly situated employee and, even if he could, he cannot demonstrate that the City's stated basis for termination is pretextual. The Court finds the latter argument to be dispositive.

Assuming, *arguendo*, that Amos could establish a prima facie showing of disparate treatment, the City's assertion that Amos was fired due to poor attitude and shirking of his responsibilities constitutes a legitimate business justification for his termination. Amos asserts that the City's justification is pretextual, attacking the City's stated reason for termination as unworthy of belief. (Doc. 27 at 23-29).

*First*, Amos asserts that the City's claim that it terminated him, in part, for his negative attitude, is pretextual. (Doc. 27 at 24-25). Amos argues that although Chapman drafted the termination letter, she did not work in the Sanitation Department, did not experience firsthand the office morale Amos was said to have negatively affected, and did not receive input from Superintendent Burgess or Assistant Superintendent Darryl Simon regarding the termination decision. (*Id.*). Amos argues further that Burgess did not find him to be a problem, that he expressly was not a morale concern, and that a rational trier of fact could find that racial animus explained the inconsistencies between Chapman's and Burgess's testimony on this point. (*Id.*).

Amos has not provided evidence sufficient to create a genuine issue of fact on these issues. Amos cites to Burgess's deposition to support his claim that his termination was not a collaborative decision, but a review of the cited material reveals that, according to Burgess, he

5

and Simon discussed Amos's final infractions with Chapman, and she indicated she would draft a letter and allow them each to read it to ensure its accuracy. (Doc. 27-1 at 72:10-14). Burgess testified that Chapman drafted the letter and he then learned that, on the basis of their conversation, the City had decided to terminate Amos. (*Id.* at 72:19 – 73:20). Although Burgess did not make the termination decision himself, he reviewed and signed the letter. (*Id.*). The termination decision benefited from Burgess's input, and he affirmed the result with his signature.

In support of his claim that both Burgess and Simon testified that they never felt like Amos's behavior warranted discipline, Amos cites to his attorney's self-serving statement, summarizing Burgess's and Simon's testimony, in Chapman's deposition. (Doc. 27 at 11). Tellingly, Amos does not cite to the testimony his counsel characterized and purported to recount at Chapman's deposition. A review of that testimony reveals that, although Burgess testified that Amos's anti-social behavior and condescending attitude did not bother *him*, he acknowledged its existence and said it *did* "bother[] his co-workers." (Doc. 27-1 at 52:20 – 53:11) ("You could probably say the whole group" came to Burgess and "complain[ed] that Mr. Amos was anti-social and condescending."). Burgess further testified that he did not believe Amos respected Simon, despite Simon's superior rank. (Doc. 21-11 at 77:17 – 78:8). Simon, for his part, testified that he mentioned Amos's attitude to Burgess. (Doc. 21-10 at 59:4-18).

In any event, the extent to which Amos's attitude bothered Burgess or Simon personally is largely beside the point, as it does not cast any doubt on the City's assertion that Amos's attitude negatively affected the morale of his co-workers and contributed to the decision to fire him. Crucially, Amos has adduced no evidence to contest this material issue of fact.

*Second*, Amos characterizes as unworthy of belief the City's claim that his choice to leave work before the garbage routes had been completed on April 22, 2013, contributed to the decision to terminate him. (Doc. 27 at 25-26). Accepting as true that Amos's established workday had ended and that Simon was asking rather than ordering him to work additional hours to help finish the routes, (*id.*), Amos has not disputed the City's material claim. The uncontroverted facts show that Amos left before work was complete, in spite of requests from his superior that he stay, and that as a result Amos's team was left shorthanded. Amos has not submitted evidence to contest these facts.

*Third*, Amos does not dispute that he missed two days of work following his early departure on April 22, 2013. Instead, he argues that he appropriately and timely gave notice in both cases that he would take sick days. (Doc. 27 at 26-27). Viewing the facts in the light most favorable to Amos, these sick days were taken in accordance with company policy. Assuming the truth of these claims, Amos has not offered evidence to dispute the City's assertion that his absence, following directly on his frustrated exit, contributed to the decision to fire him. Rightly or wrongly, the City appears to have believed Amos was malingering. (*See* Doc. 21-8). Although the decision to terminate an employee on suspicion that he was abusing a sick leave policy, if true, might be assailable on other grounds, in the present litigation Amos has not provided evidence to show that scenario to be unworthy of belief.

In short, Amos simply has offered no evidence to suggest that the City's proffered reasons for terminating him are pretextual. Instead, the uncontroverted evidence reveals an employer, in an exercise of its business judgment, deciding to terminate a difficult employee following the culmination of his perceived infractions. *See Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) ("[T]he relevant inquiry is not whether [employer's] proffered reasons

were wise, fair or correct, but whether [employer] honestly believed those reasons and acted in good faith upon those beliefs. Moreover, our role is not to second guess an employer's business judgment.") (citations omitted). Accordingly, summary judgment as to this claim is proper.

## II. Section 1981 Discriminatory Discharge Claim

Amos's § 1981 claim is based upon the same facts as his Title VII claim. "Cases establish that, in racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) (citing *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985)). As such, Amos's § 1981 claim is duplicative of his Title VII claim. Based upon the analysis of Amos's Title VII claim, summary judgment is also proper as to Amos's § 1981 claim.

## III. Intentional Infliction of Emotional Distress

The Court has granted summary judgment as to Amos's claims arising under federal law and Amos's only remaining claim is a claim for intentional infliction of emotional distress under Oklahoma law. Under the circumstances presented here, the Tenth Circuit has recognized that the preferred practice is to decline to exercise supplemental jurisdiction over a remaining state law claim where a basis for original jurisdiction is no longer present. *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."); *see also Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (affirming district court's decision to decline supplemental jurisdiction over state law negligence claim where summary judgment was granted as to § 1983 claims against political subdivision of state); *Lawler v. QuikTrip Corp.*, 172 F. App'x 873, 877 (10th Cir. 2006) (affirming district court's summary

judgment order dismissing state law claims under 28 U.S.C. § 1367). Accordingly, the Court declines to exercise supplemental jurisdiction over Amos's remaining state law claim and it is hereby dismissed without prejudice.

**IT IS THEREFORE ORDERED** that defendant City of Claremore's Motion for Summary Judgment (Doc. 21) is **granted**. Specifically, summary judgment is granted as to plaintiff's federal claims and his remaining state law claim is dismissed without prejudice. A separate judgment will be entered herewith. This case is hereby terminated.

**SO ORDERED** this 2nd day of March, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE